Filed 1/12/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re P.H., JR., A Person Coming Under the Juvenile Court Law. | B321592 |
| | (Los Angeles County Super. Ct. No. 22CCJP00872A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. P.H., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Mary E. Kelly, Judge. Affirmed.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Senior Deputy County Counsel, for Plaintiff and Respondent.

P.H. (Father) appeals from juvenile dependency jurisdiction and disposition orders concerning his son, P.H., Jr., (Minor), which were made after the juvenile court found there was no reason to know Minor was an Indian child under the Indian Child Welfare Act (ICWA). We consider whether ICWA and related state law obligated the Los Angeles County Department of Children and Family Services (the Department) and the juvenile court to ensure certain tribes were formally notified of the proceedings.

## I. BACKGROUND

The sole issue raised in Father's appeal is ICWA compliance, and we accordingly focus on the facts bearing on that issue.

Minor, born in 2011, lived with Father and his mother, A.R. (Mother). In March of 2022, the Department filed a juvenile dependency petition alleging Minor was at substantial risk of serious physical harm based on physical abuse by Mother, Father's failure to protect Minor from Mother, and unsanitary conditions in their home. The Department later filed a first amended petition adding allegations that Minor was at substantial risk of serious physical harm based on Mother's alcohol abuse and Father's history of methamphetamine and alcohol abuse.

In connection with the initial detention hearing, both parents filed ICWA-020 Parental Notification of Indian Status forms indicating they may be members of, or eligible for membership in, federally recognized Indian tribes. Father indicated possible affiliation with "Yucca Indian or Navajo" tribes in New Mexico and informed the court at the detention hearing

2

that his mother might have more information. Mother indicated Minor's maternal great-great-grandmother Lilia A. was "possible Apache" and maternal great-aunt Christina W. (Christina) may know more. Mother further indicated Minor's great-grandmother "on [Mother's] father's side," Susie R. (Susie), was "possible Yuki" and maternal great-aunt Maria S. (Maria) may know more about that. The juvenile court ordered the Department to investigate Minor's possible connection to the Apache, Yuki, Yucca Indian, and Navajo tribes.

When speaking with a Department social worker, Mother said the only relatives she could think of who might have ICWA-related information were Christina and Maria. The Department was unsuccessful in multiple attempts to contact Christina. It was, however, able to reach Maria. Maria told the Department "she had no way of proving that her family had any Yaki heritage." She said her mother, Susie (Minor's great-grandmother), never claimed Indian ancestry. Maria was not close to the family of her father, Inez R.R. (Minor's great-grandfather), but someone at Inez R.R.'s funeral told her that a photo on display showed Inez R.R.'s mother (Minor's great-great-grandmother) "dressed in a Yaki Indian outfit."

The Department investigated Father's claimed Yucca and Navajo ancestry by speaking with Father and Minor's paternal grandmother, Gloria H. (Gloria). Gloria denied Father had any Indian ancestry, explaining that her parents "never mentioned anything" and Minor's paternal grandfather's family was Irish. Father conceded he did not know why he believed he had Indian ancestry, explaining that he "remember[ed] as a kid watching western movies with [his] grandparents[,] [and] maybe it was all the folklore."

3

In April 2022, the Department mailed ICWA-030 Notice of Child Custody Proceeding for Indian Child forms to the Secretary of the Interior, the Bureau of Indian Affairs, and several Apache and Navajo tribes. The notice informed the recipients of an adjudication hearing set for May 2022. The Department received return receipts from all the tribes except the Navajo Nation.[1]

At the April 2022 detention hearing, the juvenile court found it "[did] not have a reason to know that [Minor] is an Indian Child, as defined under ICWA, and [did] not order notice to any tribe or the BIA." The court did, however, order the Department to make further efforts to contact Christina.

The juvenile court assumed dependency jurisdiction over Minor in May 2022, sustaining the amended petition's allegations relating to unsanitary conditions in the home and Mother's alcohol abuse.

At the June 2022 disposition hearing, the juvenile court found the Department's ICWA "investigation is complete, and there is no reason to know that the child is subject to the ICWA statute." The juvenile court ordered Minor removed from the parents. Mother and Father were granted monitored visitation and ordered to participate in individual counseling and other programs.

## II.  DISCUSSION

Father challenges only the Department's failure to provide tribes with formal notice of the juvenile court proceedings

---

[1]     The Bureau of Indian Affairs sent a letter listing an address for the Navajo Nation's ICWA Program that differed from that to which the Department sent notice.

pursuant to ICWA and related California law.[2]  As we shall explain, no formal notice was statutorily required because none of the statements by Minor's parents or other family members provide reason to know he is an Indian child for purposes of the relevant statutes.[3]

### A.     *Legal Framework*

ICWA and related California law define an "Indian child" to include a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.  (25 U.S.C. § 1903(4); Welf. & Inst. Code,[4] § 224.1, subds. (a) & (b).)  In addition to imposing substantive requirements concerning the placement of and termination of parental rights to an Indian child, ICWA gives

---

[2]     Perhaps in view of the fact that ICWA duties are continuing duties that exist throughout a dependency proceeding, appeals raising ICWA issues are most frequently taken from orders terminating parental rights, not disposition orders.  In this appeal, we have not been asked to decide (and do not decide) whether there is any jurisprudential reason not to entertain an ICWA-related challenge from an appeal taken from a disposition order and associated jurisdiction finding.

[3]     The Department and the juvenile court may at times decide it is advisable to provide notice to tribes as a prudential matter even when such notice is not statutorily required.  That is to be encouraged, and a rule mandating reversal any time such voluntarily provided notice is imperfect would not encourage the practice.

[4]     Undesignated statutory references that follow are to the Welfare and Institutions Code.

Indian tribes the right to intervene in state court proceedings contemplating such actions.  (25 U.S.C. §§ 1911(c), 1912, 1915.)

Relatedly, ICWA and related California statutes impose an affirmative and continuing duty to inquire whether a child who is the subject of a dependency proceeding is or may be an Indian child.  (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7-8.)  Section 224.2, subdivision (b) states a "county welfare department . . . has a duty to inquire whether [a] child is an Indian child" and "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ."  So-called "further inquiry" is required if there is "reason to believe" the child is an Indian child (§ 224.2, subd. (e)), and formal notice to the relevant tribes is required if there is "reason to know" the child is an Indian child (§ 224.3, subd. (a)).  Here, there is no need to attempt to distinguish between these standards because Father challenges only compliance with the notice requirement that is triggered by a reason to know a child is an Indian child.

Such reason to know exists "under any of the following circumstances: [¶] (1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child.  [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village.  [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating

6

that the child is an Indian child.  [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child.  [¶] (5) The court is informed that the child is or has been a ward of a tribal court.  [¶] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d).)

We review the juvenile court's ICWA findings for substantial evidence.  (See, e.g., *In re N.F.* (2023) 95 Cal.App.5th 170, 178; *In re H.B.* (2023) 92 Cal.App.5th 711, 719.)

### B.      Formal Notice to Tribes Was Not Required Under ICWA or Related California Law

Father contends the Department failed to satisfy section 224.3, subdivision (a)'s requirements for formal notice.  He argues the Department should have sent notice to the Pascua Yaqui Tribe of Arizona,[5] the notices sent to Navajo and Apache tribes should have named Lilia and Susie and included additional information concerning various relatives' possible tribal affiliations, and the Department should have ensured the Navajo Nation received notice.  Father's arguments fail for the simple reason that formal notice is only required where there is reason

---

[5]      Mother and Father mentioned possible Yuki, Yaki, and Yucca heritage, but Father suggests "Yaki" is a misspelling of "Yaqui."  The Pascua Yaqui Tribe of Arizona is the only Yaqui tribe with an ICWA representative listed on the Bureau of Indian Affairs' website.  (Bur. Indian Affairs, ICWA Designated Agents Listing <https://www.bia.gov/bia/ois/dhs/icwa/agents-listing> [as of Dec. 12, 2023].)

to know an Indian child is involved (§ 224.3, subd. (a))—and here, there was no such reason.

Nothing in the record establishes reason to know Minor is an Indian child based on the six circumstances set forth in section 224.2, subdivision (d). At most, the statements by Father, Mother, Maria, and Gloria suggest Minor might have some Indian ancestry. But "tribal ancestry is not among the criteria for having a reason to know the child is an Indian child." (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885; accord *In re Dominic F.* (2020) 55 Cal.App.5th 558, 571 ["A suggestion of Indian ancestry is not sufficient under ICWA or related California law to trigger the notice requirement"].)

Father nonetheless suggests formal notice was required, even in the absence of reason to know Minor is an Indian child, because the Department did contact the Navajo and Apache tribes. Father is concerned that the juvenile court's ICWA finding was "based on highly defective notices" and might "potentially prejudice future courts in juvenile dependency matters regarding this family." But Father is mistaken that the juvenile court's ICWA finding was based on the Department's compliance with formal notice requirements. As we have already explained, the juvenile court never found formal notice was required—and, under the circumstances, it was not.

8

## DISPOSITION

The jurisdiction finding and disposition order are affirmed.

**CERTIFIED FOR PUBLICATION**


BAKER, J.

We concur:


RUBIN, P. J.


MOOR, J.